IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SIMMONDS EQUIPMENT, LLC,       §
      §
      Plaintiff,       §
      §
v.       §       CIVIL ACTION NO. H-15-0862
      §
GGR INTERNATIONAL, INC.,       §
      §
      Defendant.       §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Simmonds Equipment LLC ("Simmonds"), has filed a Complaint (Docket Entry No. 1) against defendant, GGR International, Inc. ("GGR"), for violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, et seq.; the Texas Theft Liability Act ("TTLA"), Texas Civil Practices & Remedies Code § 134.001, et seq.; and for conversion and tortious interference with prospective business relations. Pending before the court is GGR's Motion to Dismiss Under FRCP 12(b)(6) and FRCP 12(b)(1) (Docket Entry No. 6), in which GGR seeks dismissal of Simmonds' claims for conversion and for violation of the CFAA and the TTLA. Simmonds' opposition to GGR's motion to dismiss contains a request for leave to amend should the court decide to grant GGR's motion to dismiss.[1] For the reasons stated below, the pending motion to

---

[1]Plaintiff's Opposition to Defendant's Motion to Dismiss under FRCP 12(b)(6) and FRCP 12(b)(1) ("Plaintiff's Opposition"), Docket Entry No. 9, p. 2 ¶ 3.

dismiss will be granted as to Simmonds' conversion claim and denied in all other respects; and Simmonds' request to file an amended complaint will be granted.

## I.   Factual Allegations

Simmonds alleges that on August 23, 2013, it executed two contracts with GGR: a Website Agreement and a Marketing Agreement.[2] Simmonds alleges that under the Website Agreement GGR was to design its company website via the following three-stage process: (1) the design process would commence on September 1, 2013; (2) the Website would launch by January 1, 2014; and (3) the Website Agreement would terminate on its own terms no later than February 28, 2014. Simmonds alleges that the website design process progressed quickly and ended early with "the website completed and final payment under the [Website] Agreement tendered on October 10, 2013, thereby terminating the Website Agreement on that date."[3] Simmonds alleges that GGR "had and has no ownership rights over the website or its content and was provided only a limited license to utilize Simmonds' names, trademarks, logos, and service marks . . . in order to design and develop the site."[4] Simmonds alleges that the Marketing Agreement provided for GGR to develop and implement a variety of branding, sales, and marketing

---

[2]Complaint, Docket Entry No. 1, pp. 1-4 ¶¶ 8-21.

[3]Id. at 4 ¶ 16.

[4]Id. at 3 ¶ 13.

strategies, and also provided for the agreement to terminate no later than six months from its September 1, 2013, commencement date.[5] Simmonds alleges that "nothing in the Marketing Agreement gave GGR any rights to or ownership interests in Simmonds' company website;"[6] but, instead, the Marketing Agreement granted GGR "only a limited right to use Simmonds' marks in connection with its performance under the Marketing Agreement."[7]

Simmonds alleges that it "quickly became dissatisfied with the services provided by GGR under the Website and Marketing Agreements,"[8] but that it was

> excited to implement a website feature heavily touted by GGR which would enable Simmonds to create and make sales presentations directly through the company website, without the need to load pitches and related materials onto external drives and launch them through PowerPoint to similar software installed on laptop computers.[9]

Simmonds alleges that it "paid GGR $40,000 under the Marketing Agreement despite receiving virtually nothing of value."[10] Simmonds alleges that on March 25, 2014, GGR's Chief Operating Officer, Jayson Nesbitt ("Nesbitt"), e-mailed its CEO, Brian Simmonds, to say that GGR was placing Simmonds' account "on hold" due to

---

[5] Id. at 4 ¶ 21.

[6] Id. at 4 ¶ 19.

[7] Id. at 4 ¶ 20.

[8] Id. at 4 ¶ 22.

[9] Id. at 5 ¶ 24.

[10] Id. at 5 ¶ 27.

Simmonds' alleged non-payment of outstanding invoices under the Marketing Agreement. Despite being told that Brian Simmonds was in Colombia to make a sales presentation to a prospective customer and would return only two days later, on March 27, 2014, Nesbitt again e-mailed Simmonds to say that the Simmonds account was "suspended" and that GGR had "temporarily deactivated" the Simmonds' company website and all incorporated functionality due to the alleged non-payment of Marketing invoices. Simmonds alleges that it

> subsequently learned that GGR's owner and CEO, Claire Ansell, had contacted a Simmonds employee, and on the false pretense that GGR was authorized and needed to work on the Simmonds website, obtained the password to the company website in order to access the site via a third-party hosting company and convert it for GGR's own purposes.[11]

Simmonds alleges that due to "GGR's unlawful conduct, Mr. Simmonds was unable to make the sales presentation for which he had traveled to Colombia, and his company lost a business opportunity of more than $1,000,000 with a major prospective customer."[12]

## II. Standards of Review

Asserting that "[t]his is a breach of contract case — nothing more,"[13] and citing Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), GGR moves "to dismiss Plaintiff's sole federal claim (and

---

[11]Id. at 6 ¶ 30.

[12]Id. ¶ 31.

[13]Motion to Dismiss under FRCP 12(b)6) and FRCP 12(b)(1) ("GGR's Motion to Dismiss"), Docket Entry No. 6, p. 1.

thus federal question jurisdiction) and state law claims of Conversion and Theft."[14]   GGR also "moves to dismiss this case for lack of subject matter jurisdiction as the contracts themselves limit liability so that the amount in controversy in this case does not rise to the $75,000.00 minimum amount to trigger diversity jurisdiction."[15]   Simmonds responds that none of its claims are subject to dismissal, but that should the court decide otherwise, Simmonds requests leave to file an amended complaint.[16]

A.   Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to the court's subject matter jurisdiction.   "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."   Home Builders Association of Mississippi, Inc. v. City of Madison, Mississippi, 143 F.3d 1006, 1010 (5th Cir. 1998).   "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases:  (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."   Clark v. Tarrant County, Texas, 798

---

[14]Id.

[15]Id. at 2.

[16]Plaintiff's Opposition, Docket Entry No. 9, p. 2 ¶ 3.

F.2d 736, 741 (5th Cir. 1986). Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. See Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings. Id. A factual attack challenges the existence of subject matter jurisdiction in fact -- irrespective of the pleadings -- and matters outside the pleadings -- such as testimony and affidavits -- may be considered. Id. Because GGR has not submitted evidence outside plaintiff's pleadings in support of its Rule 12(b)(1) motion to dismiss, the motion is a facial attack; and the court's review is limited to whether the complaint sufficiently alleges jurisdiction. Simmonds, as the party asserting federal jurisdiction, has the burden of showing that the jurisdictional requirement has been met. Alabama-Coushatta Tribe of Texas v. United States, 757 F.3d 484, 487 (5th Cir. 2014). When facing a challenge to subject matter jurisdiction and other challenges on the merits, courts must consider the Rule 12(b)(1) jurisdictional challenge before addressing the merits of the case. Id.

B.    Rule 12(b)(6)

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.

-6-

P. 8(a)(2).  A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom Cloud v. United States, 122 S. Ct. 2665 (2002).  The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  Id.  To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 127 S. Ct. at 1965).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 127 S. Ct. at 1966). When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the

claim and referenced by the complaint." <u>Lone Star Fund V (U.S.),</u> <u>L.P. v. Barclays Bank PLC</u>, 594 F.3d 383, 387 (5th Cir. 2010).

## III.   <u>Analysis</u>

### A.   The Court Has Subject Matter Jurisdiction

Under the heading "Jurisdiction and Venue," Simmonds alleges:

> 5.   The Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiff brings a claim arising under federal law and related claims that form part of the same case or controversy.

> 6.   The Court also has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 as Plaintiff and Defendant are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.[17]

### 1.   <u>Federal Question Jurisdiction Exists Because Simmonds Has Stated a Claim for Violation of the CFAA</u>

GGR argues that Simmonds has failed to establish federal question jurisdiction because Simmonds' only federal law claim for violation of the CFAA, 18 U.S.C. § 1030, <u>et seq.</u>, is subject to dismissal under Rule 12(b)(6) for failure to allege that GGR accessed a "protected computer," had the requisite "intent to defraud," obtained "anything of value" by accessing Simmonds' website, or suffered a cognizable "loss."[18] Plaintiff responds that GGR's arguments have no merit.[19]

---

[17]Complaint, Docket Entry No. 1, p. 2 ¶¶ 5-6.

[18]GGR's Motion to Dismiss, Docket Entry No. 6, p. 4.

[19]Plaintiff's Opposition, Docket Entry No. 9, pp. 5-6.

(a)   Applicable Law

In pertinent part the CFAA provides:[20]

(a) Whoever —

. . .

(5)(B) intentionally accesses a protected computer
without authorization, and as a result of such
conduct, recklessly causes damage; or

(C) intentionally accesses a protected computer
without authorization, and as a result of such
conduct, causes damage and loss[;]

. . .

shall be punished as provided in subsection (c) of this
section.

18 U.S.C. § 1030(a)(5)(B) and (C).  The CFAA also provides that

[a]ny person who suffers damage or loss by reason of a
violation of this section may maintain a civil action
against the violator to obtain compensatory damages and
injunctive relief or other equitable relief.  A civil
action for a violation of this section may be brought
only if the conduct involves 1 of the factors set forth
in subclauses (I), (II), (III), (IV), or (V) of
subsection (c)(4)(A)(i).   Damages for a violation
involving only conduct described in subsection
(c)(4)(A)(i)(I) are limited to economic damages.

18 U.S.C. § 1030(g).  The only factor delineated in subsection

(c)(4)(A)(i) relevant to the instant case is (I): "loss to one or

more persons during any one-year period . . . aggregating at least

$5,000 in value."  § 1030(c)(4)(A)(i).[21]

---

[20]Id. at 5 (citing 18 U.S.C. § 1030(a)(5)(B)-(C) as the basis
for the CFAA claims asserted in this action).

[21]The other factors are:

(II)  the modification or impairment, or potential
modification or impairment, of the medical examination,
diagnosis, treatment, or care of 1 or more individuals;
(continued...)

        (b)   Application of the Law to the Alleged Facts

Simmonds alleges:

46.   GGR, without authorization, accessed a protected
computer in order to impair the availability of data
located thereon, namely, the Simmonds website and its
incorporated functionality.

47.   GGR undertook such actions in order to extort from
Simmonds payment of allegedly past due invoices under the
Marketing Agreement.

48.   GGR's actions violate The Computer Fraud and Abuse
Act, 18 U.S.C. § 1030, *et seq*.

49.   As a direct result of GGR's unlawful conduct,
Simmonds suffered recoverable damages, including actual
damages, consequential damages, and lost profits.[22]

---

[21](...continued)
(III)   physical injury to any person;

(IV)   a threat to public health or safety;

(V)   damage affecting a computer used by or for an
entity of the United States Government in furtherance of
the administration of justice, national defense, or
national security.

18 U.S.C. § 1030(c)(4)(A)(i)(II-V).

(ii) the modification or impairment, or potential
modification or impairment, of the medical examination,
diagnosis, treatment, or care of 1 or more individuals;

(iii) physical injury to any person;

(iv) a threat to public health or safety; or

(v) damage affecting a computer system used by or for a
government entity in furtherance of the administration of
justice, national defense, or national security.

[22]Complaint, Docket Entry No. 1, pp. 8-9 ¶¶ 46-49.

(1)  **Protected Computer**

GGR argues that Simmonds has failed to allege that GGR "accessed a 'protected computer.'"[23]  Citing the CFAA's definition of "protected computer," GGR argues that Simmonds "has made no allegation related to this element and GGR had lawful access to the website's pages.  GGR didn't have to steal the password or act surreptitiously — it already had lawful access."[24]  Simmonds argues that GGR's argument that Simmonds failed to allege that GGR accessed a protected computer has no merit because ¶ 46 of Simmonds' Complaint states:  "GGR, without authorization, accessed a protected computer in order to impair the availability of data located thereon, namely, the Simmonds website and its incorporated functionality."[25]

The CFAA defines "protected computer" as "a computer— . . . which is used in or affecting interstate or foreign commerce or communication. . ."  18 U.S.C.A. § 1030(e)(2)(B).  "Pleading specific facts that the defendant accessed a computer connected to the internet is sufficient to establish that the accessed computer was 'protected.'"  Merritt Hawkins & Associates v. Gresham, 948 F. Supp. 2d 671, 674 (N.D. Tex. 2013) (citing United States v. Trotter, 478 F.3d 918, 921 (8th Cir. 2007) (holding that the

---

[23]GGR's Motion to Dismiss, Docket Entry No. 6, p. 4.

[24]Id.

[25]Plaintiff's Opposition, Docket Entry No. 9, p. 5 (citing Complaint, Docket Entry No. 1, ¶ 46).

accessed computer was "protected" because defendant "admitted the computers were connected to the Internet")); Becker v. Toca, No. 07-7202, 2008 WL 4443050, at *5 (E.D. La. Sept. 26, 2008) (plaintiff sufficiently pleaded that computer was "protected" because he claimed that "computers were connected to the internet")). "Where a plaintiff does not allege specific facts that a defendant accessed a 'protected computer,' courts may reasonably infer from other factual allegations that the accessed computer was used in interstate [or foreign] commerce, and is therefore 'protected.'" Merritt Hawkins, 948 F. Supp. 2d at 674 (citing Quantlab Techs. Ltd. (BVI) v. Godlevsky, 719 F. Supp. 2d 766, 777 (S.D. Tex. 2010)).

In addition to pleading that GGR accessed a "protected computer," Simmonds has pleaded facts capable of showing that GGR "obtained the password to the Simmonds company website in order to access the site via a third-party hosting company and convert it for GGR's own purposes."[26]   Because these allegations that GGR accessed Simmonds' website via a third-party hosting company allege that the accessed computer was connected to the internet, the allegations are factually sufficient to satisfy the requirement for pleading that GGR accessed a "protected computer." Id.  GGR's argument that Simmonds' CFAA claim should be dismissed because GGR had lawful access to Simmonds' password and therefore did not have to steal it or act surreptitiously to obtain it is a merits

---

[26]Complaint, Docket Entry No. 1, p. 6 ¶ 30.

argument not relevant for purposes of determining whether Simmonds has stated a claim for which relief may be granted.

### (2) "Intent to Defraud" and "Obtained Anything of Value"

Citing <u>Scottrade, Inc. v. BroCo Investments, Inc.</u>, 10 Civ. 03537(RJH), 2011 WL 1226467, * 9 (S.D.N.Y. March 30, 2011), for its recognition that a CFAA claim has four elements, including that access to a protected computer be done "knowingly and with intent to defraud; and as a result has furthered the intended fraud and obtained anything of value,"[27] GGR argues that Simmonds' CFAA claim is subject to dismissal because Simmonds "has no evidence to adequately plead that there was the requisite 'intent to defraud' or that [GGR] obtained 'anything of value' by accessing [Simmonds'] website."[28] GGR argues that

> [i]t's clear from the Complaint that no information was appropriated, copied, obtained or stolen by Defendant and even if the court assumes, *arguendo*, that everything in Plaintiff's Complaint is true, Plaintiff's conduct does not rise to liability under the CFAA statute.[29]

This argument has no merit because the CFAA claims at issue in <u>Scottrade</u> were based on subsection (a)(4),[30] and although Simmonds'

---

[27]GGR's Motion to Dismiss, Docket Entry No. 6, p. 3.

[28]<u>Id.</u> at 4.

[29]<u>Id.</u>

[30]Subsection (a)(4) provides:

(a) Whoever— . . . (4) knowingly and with intent to defraud, accesses a protected computer without
(continued...)

-13-

Complaint does not identify the specific CFAA subsections on which its CFAA claims are based, in response to GGR's motion to dismiss, Simmonds states that its CFAA claims are based on subsections (a)(5)(B) and (a)(5)(C).[31]   Neither subsection (a)(5)(B) nor (a)(5)(C) requires GGR to have had an intent to defraud or to have obtained anything of value by accessing a protected computer. Thus, Simmonds does not need to allege facts capable of showing that GGR had an intent to defraud or received anything of value to allege claims based on either of these two subsections.

### (3)   Damage and Loss

GGR argues that Simmonds "alleges no 'loss' which is recognized by the statute."[32]   Asserting that "the term loss 'encompasses only two types of harm:   costs to investigate and respond to a computer intrusion, and costs associated with a service interruption,'"[33] GGR argues that Simmonds "fails to sufficiently allege either. . . [Simmonds] speculative allegations of potentially losing an international business opportunity do not

_____

[30](...continued)
authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value. . .

18 U.S.C. § 1030(a)(4).

[31]Plaintiff's Opposition, Docket Entry No. 9, pp. 4-5 ¶ 9.

[32]GGR's Motion to Dismiss, Docket Entry No. 6, p. 4.

[33]Id. (quoting Quantlab, 719 F. Supp. 2d at 776-77).

rise to the level of damages necessary to plead a CFAA violation."[34] This argument has no merit because Simmonds has adequately alleged that GGR intentionally accessed a protected computer that hosted its company website, and that as a result of that access Simmonds suffered damage and loss of more than $5,000.00.

The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information," 18 U.S.C. § 1030(e)(8), and "loss" as

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

§ 1030(e)(11). To assert a CFAA claim under subsection (a)(5)(B), Simmonds must allege that it suffered damage; while for a CFAA claim asserted under subsection (a)(5)(C), Simmonds must allege that it suffered damage and loss. Moreover, because the only appropriate factor of the six factors listed in subsection (c)(4)(A)(i) is factor (I), Simmonds must also allege facts capable of establishing that the CFAA violations at issue caused a loss to one or more persons during any one-year period of at least $5,000.00. See 18 U.S.C. § 1030(c)(4)(A)(i)(I) and (g).

Simmonds has alleged that GGR obtained the password to its company website, used that password to access Simmonds' company

---

[34]Id. at 4-5.

website via a third-party hosting company, suspended and
temporarily deactivated Simmonds' company website causing an
interruption in the website's service that rendered Simmonds' CEO
unable to make a sales presentation in Colombia, which, in turn,
caused Simmonds to lose a business opportunity valued at more than
$1,000,000.00.[35] Because the CFAA's definition of "damage" is "any
impairment to the integrity or availability of data, a program, a
system, or information," 18 U.S.C. § 1030(e)(8), and Simmonds has
alleged that GGR suspended and temporarily deactivated the
Simmonds' company website, Simmonds has sufficiently alleged that
GGR's actions caused it to suffer damage because these facts are
capable of proving that GGR impaired the integrity or availability
of Simmonds' data, program, system, or information. Because the
CFAA's definition of "loss" includes consequential damages incurred
because of interruption of service, 18 U.S.C. § 1030(e)(11), and
Simmonds has alleged that it lost a business opportunity worth
$1,000,000.00 due to an interruption in service of its website
caused by GGR, Simmonds has sufficiently alleged that GGR's actions
caused it to suffer "loss" in an amount sufficient to satisfy the
pleading requirements for stating a CFAA claim under subsection
(a)(5)(B) or (a)(5)(C). See Quantlab, F. Supp. 2d at 776 ("loss"
as defined under the CFAA includes costs involved with a service
interruption). GGR's argument that Simmond's lost business

---

[35]Complaint, Docket Entry No. 1, pp. 5-6 ¶¶ 29-31.

opportunity is too speculative to support a CFAA claim is a merits argument that is not relevant for purposes of determining whether Simmonds has stated a claim for which relief may be granted. Simmonds need not prove its damages at this point in the case. <u>See</u> Fed. R. Civ. P. 8(a)(1). Accordingly, GGR's motion to dismiss Simmonds CFAA claims will be denied.

       (c)  Conclusions

    Because Simmonds has alleged facts capable of establishing a claim for violations of the CFAA, the court concludes that this action is not subject to dismissal for lack of subject matter jurisdiction due to Simmonds failure to state a claim based on federal law.

      2.  <u>Simmonds Has Not Alleged Diversity Jurisdiction</u>

    A district court has jurisdiction over civil matters "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332. GGR "moves to dismiss this case for lack of [diversity] jurisdiction as the contracts themselves limit liability so that the amount in controversy in this case does not rise to the $75,000.00 minimum amount to trigger diversity jurisdiction."[36] Because Simmonds' allegations are not sufficient to establish that the parties are completely diverse, the court raises this issue <u>sua sponte</u>. <u>See</u> <u>Perez v. Stephens</u>, 784

---

    [36]<u>Id.</u> at 2.

F.3d 276, 280 (5th Cir. 2015) ("It is axiomatic that we must consider the basis of our own jurisdiction, sua sponte if necessary.").

> (a) Simmonds Has Not Sufficiently Alleged that the Parties are Diverse

A federal diversity action requires complete diversity of citizenship. See Stiftung v. Plains Marketing, L.P., 603 F.3d 295, 297 (5th Cir. 2010). "Complete diversity [of citizenship] 'requires that all persons on one side of the controversy be citizens of different states than all persons on the other side.'" Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1079-80 (5th Cir. 2008) (quoting McLaughlin v. Mississippi Power Co., 376 F.3d 344, 353 (5th Cir. 2004)). When one of the parties is an LLC, the LLC's citizenship is determined by the citizenship of all of its members. Id. at 1080. Citizenship is based on domicile, i.e., where an individual resides and intends to remain. Acridge v. Evangelical Lutheran Good Samaritan Society, 334 F.3d 444, 448 (5th Cir. 2003). Plaintiff's Complaint identifies Simmonds as "a Louisiana limited liability company organized under the laws of the State of Louisiana with its principal place of business in Louisiana,"[37] and GGR as "a Texas corporation organized under the laws of the State of Texas with its principal place of business in Texas."[38] However, the Complaint contains no mention of Simmonds' members, let alone

---

[37] Id. at 1 ¶ 3.

[38] Id. at 2 ¶ 4.

their respective states of citizenship.  Under <u>Harvey</u>, 542 F.3d
1077, these allegations are facially insufficient to establish the
existence of diversity jurisdiction.

> (b)  Simmonds Has Alleged Amount in Controversy

Citing § 8 titled "Limitation of Liability" of both the
Website Agreement and the Marketing Agreement, GGR argues that the
court cannot properly exercise diversity jurisdiction in this case
because the "liability between the parties is contractually limited
and the amount in controversy in this case does not rise to the
minimum level to trigger diversity jurisdiction."[39]  Quoting <u>Helms
v. Southwestern Bell Telephone Co.</u>, 794 F.2d 188, 193 (5th Cir.
1983), Simmonds responds that "there is no basis for a finding that
diversity jurisdiction does not exist in this case"[40] because "Texas
courts may not enforce a contractual limitation of liability as a
defense to an intentional tort."[41]

GGR's argument that Simmonds has failed to allege an amount in
controversy sufficient to satisfy the requirements for diversity
jurisdiction has no merit.  Simmonds has alleged a claim against
GGR for tortious interference with prospective business relations,
and GGR has not sought dismissal of that claim.  Interference with

---

[39]GGR's Motion to Dismiss, Docket Entry No. 6, p. 7.  <u>See also</u>
Defendant GGR's Reply to Plaintiff's Response to Defendant's Motion
to Dismiss, Docket Entry No. 10, pp. 2-3.

[40]Plaintiff's Opposition, Docket Entry No. 9, p. 9 ¶ 21.

[41]<u>Id.</u>

prospective business relations is intentional if the defendant intended to interfere or was substantially certain that interference would result, but not if the interference was incidental. See Gil Ramirez Group, L.L.C. v. Houston Independent School District, 786 F.3d 400, 417-18 (5th Cir. 2015) (citing Coinmach Corp. v. Aspenwood Apartment Corp., 417 S.W.3d 909, 923 (Tex. 2013), and Bradford v. Vento, 48 S.W.3d 749, 757 (Tex. 2001)). Because Simmonds has alleged facts capable of establishing that GGR intended to interfere or was substantially certain that interference would result from its accessing a protected computer to suspend and temporarily deactivate Simmonds' company website, the tortious interference claim asserted in this action is a claim for an intentional tort. See City of Houston v. Guthrie, 332 S.W.3d 578, 593 (Tex. App. — Houston [1st Dist.] 2009, pet. denied) ("Tortious interference is an intentional tort."). See also Holloway v. Skinner, 898 S.W.2d 793, 795-96 (Tex. 1995) (stating that elements of claim for tortious interference with contract include willful and intentional act of interference).

Accordingly, the court concludes that GGR may not limit its liability pursuant to the limitation of liability clause in either the Website Agreement or the Marketing Agreement because "Texas courts may not enforce a contractual limitation of liability as a defense to an intentional tort such as fraud." Helms, 794 F.2d at 193. See Solis v. Evans, 951 S.W.2d 44, 50 (Tex. App. — Corpus Christi 1997) (finding that it would be "contrary to public policy" for a party to "prospectively contractually exculpate

-20-

itself with respect to intentional torts"); <u>Aluchem, Inc. v.</u>
<u>Sherwin Alumina, L.P.</u>, Civil Action Nos. C-06-183, C-06-210, 2007
WL 1100473, *9 (S.D. Tex. April 11, 2007) ("[S[ince AluChem brings
an intentional tort claim against the Defendants in this case,
Sherwin Alumina cannot limit its liability pursuant to the Supply
Agreement's limitation of liability clause.").

**B.   Failure to State a Claim for Which Relief May be Granted**

Asserting that

> [i]t's clear from the Complaint that no information was
> appropriated, copied, obtained or stolen by Defendant and
> even if the court assumes, *arguendo*, that everything in
> Plaintiff's Complaint is true, Plaintiff's conduct does
> not rise to liability under this statute and common law
> elements for Conversion,[42]

GGR argues that

> Plaintiff's Complaint includes no sufficiently alleged
> facts that could form the basis of any successful cause
> of action against Defendant for conversion or theft of
> Plaintiff's website.  When Plaintiff failed to pay monies
> contractually due GGR, GGR blocked Plaintiff's access to
> the new website GGR had created for Plaintiff.  Within an
> hour, Plaintiff had its original website back online and
> functional. . . [T]here was no conversion or theft.
> Simply blocking Plaintiff's access to the website's
> content does not rise to liability under either cause of
> action.[43]

**1.   <u>Simmonds' Conversion Claim is Subject to Dismissal</u>**

Simmonds alleges:

> 33.  Simmonds owned, had legal possession to, and/or had
> entitlement to possession of its website and incorporated
> functionality.

---

[42]GGR's Motion to Dismiss, Docket Entry No. 6, p. 5.

[43]<u>Id.</u> at 6.

34.   GGR, unlawfully and without authorization, assumed and exercised dominion and control over the website to the exclusion of and/or inconsistent with Simmonds' rights as an owner.   In particular, GGR disabled the website and rendered it inaccessible to Simmonds and its customers.

35.   As a direct result of GGR's conversion of Simmonds' website and Simmonds' loss of use of the website, Simmonds suffered recoverable damages, including actual damage, consequential damages, and lost profits.

36.   Because GGR's conduct was intentional and malicious, Simmonds is also entitled to and seeks, exemplary damages.[44]

"Conversion is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." Mayo v. Hartford Life Insurance Co., 354 F.3d 400, 410 (5th Cir. 2004) (quoting Green International Inc. v. Solis, 951 S.W.2d 384, 391 (Tex. 1997)). See also Waisath v. Lack's Stores, Inc., 474 S.W.2d 444, 447 (Tex. 1971) ("The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion."). To establish conversion of personal property, a plaintiff must prove

(1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; and (3) the plaintiff suffered injury.

Lopez v. Lopez, 271 S.W.3d 780, 784 (Tex. App. — Waco 2008, no pet.) (citing United Mobile Networks, L.P. v. Deaton, 939 S.W.2d

[44]Complaint, Docket Entry No. 1, pp. 6-7 ¶¶ 33-36.

-22-

146, 147 (Tex. 1997), and Apple Imports, Inc. v. Koole, 945 S.W.2d 895, 899 (Tex. App. — Austin 1997, pet. denied)). "If the defendant originally acquired possession of the plaintiff's property legally, the plaintiff must establish that the defendant refused to return the property after the plaintiff demanded its return." Id. (citing Presley v. Cooper, 284 S.W.2d 138, 141 (Tex. 1955). In addition, "[a] plaintiff must prove damages before recovery is allowed for conversion." Deaton, 939 S.W.2d at 147 (citing Prewitt v. Branham, 643 S.W.2d 122, 123 (Tex. 1982)).

> Generally, the measure of damages for conversion is the fair market value of the property at the time and place of conversion. . . . However, damages are limited to the amount necessary to compensate the plaintiff for the actual losses or injuries sustained as a natural and proximate result of the defendant's conversion.

Id. at 148. "A conversion should not unjustly enrich either the wrongdoer or the complaining party." Id.

Simmonds argues that it has alleged a claim for conversion under Texas law because it has alleged facts capable of establishing that it had entitlement to possession of its website and incorporated functionality, that GGR unlawfully and without authorization assumed and exercised dominion and control over the website to the exclusion of Simmonds' rights as owner, and that Simmonds was injured as a result.[45] Simmonds notes that "[c]ourts throughout the United States have recognized websites as personal

---

[45]Plaintiff's Opposition, Docket Entry No. 9, pp. 7-8 ¶ 14.

property subject to a valid conversion claim, and a Texas court would likely make the same ruling."[46]

"Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted." Express One International, Inc. v. Steinbeck, 53 S.W.3d 895, 901 (Tex. App. — Dallas 2001, no pet.). See Prewitt, 643 S.W.2d at 123 (allowing claim for conversion of rights conferred by a lease because the rights had been merged into a tangible document); Carson v. Dynegy, Inc., 344 F.3d 446, 456 (5th Cir. 2003) (explaining that Texas conversion law "concerns only physical property"); Neles-Jamesbury, Inc. v. Bill's Valves, 974 F. Supp. 979, 982 (S.D. Tex. 1997) (holding that Texas law does not recognize a claim for conversion of a trademark because plaintiff did not allege that defendants converted any document representing plaintiff's intangible rights). Based on the foregoing Texas authority, the court concludes that Simmonds' allegations are not sufficient to state a claim for conversion under Texas law because Simmonds alleges that GGR converted its website, a website is intangible, and conversion applies only to tangible property under Texas law. The cases Simmonds has cited in

---

[46]Id. at 7 n.7 (citing Budsgunshop.com LLC v. Security Safe Outlet, Inc., No. 5:10-CV-390-KSF, 2012 WL 1899851 (E.D. Ky. May 23, 2012); Meitler Consulting, Inc. v. Dooley, No. 05-2126-DJW, 2007 WL 1834008 (D. Kan. June 26, 2007); Astroworks, Inc. v. Astroexhibit, Inc., 257 F. Supp. 2d 609, 618 (S.D.N.Y. March 12, 2003)).

support of the argument that its conversion claim is not subject to dismissal are all inapposite because none of those cases involved Texas law and all of them accepted without analysis that a website constitutes personal property subject to conversion. Accordingly, GGR's motion to dismiss Simmonds claim for conversion will be granted.

      2.   <u>Simmonds' TTLA Claim is Not Subject to Dismissal</u>

Simmonds alleges:

46. Simmonds is the owner of its website and/or has possessory rights greater than any of GGR's.

47. Simmonds' website constitutes personal property.

48. In accessing and disabling Simmonds' website, GGR exercised unauthorized control over Simmonds' property, with the intent to deprive Simmonds of it, in order to extract from Simmonds payment of allegedly past due invoices under the Marketing Agreement.

49. This misconduct constitutes a violation of the Texas Theft Liability Act ("TTLA"), Tex. Civ. Prac. & Rem. Code §§ 134.001-.005.

50. As a direct result of GGR's misconduct, Simmonds suffered recoverable damages, including actual damages, consequential damages, and lost profits.

51. Simmonds is also entitled to, and seeks, statutory damages, costs, and attorneys' fees, as permitted under the TTLA.

[52.] Because GGR's conduct was malicious and/or reckless, Simmonds is also entitled to, and seeks, exemplary damages.[47]

The TTLA provides a civil cause of action to victims of theft, as defined by the Texas Penal Code. <u>See</u> Tex. Civ. Prac. & Rem.

---

[47]Complaint, Docket Entry No. 1, p. 8 ¶¶ 46-52 (mislabeled 41).

Code §§ 134.001-.005.  The TTLA allows for recovery from a person who commits "theft" -- actual damages, up to $1,000 in additional damages, court costs, and reasonable and necessary attorney's fees. Tex. Civ. Prac. & Rem. Code § 134.005.  The TTLA defines "theft" as "unlawfully appropriating property or unlawfully obtaining services as described by Section 31.03, 31.04, 31.06, 31.07, 31.11, 31.12, 31.13 or 31.14, Penal Code."  Tex. Civ. Prac. & Rem. Code § 134.002(2).  Simmonds' Complaint does not identify the specific section of the Penal Code on which its TTLA claim is based, but in response to GGR's motion to dismiss, Simmonds states that the pertinent section of the TTLA allows claims "stemming from an unauthorized, intentional taking of personal property, with the intent to deprive the owner of the property."[48]  Such a claim is governed by § 31.03(a) of the Texas Penal Code, which provides that "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.  The elements of a cause of action under the TTLA based on § 31.03(a) are:  (1) the plaintiff had a possessory right to property; (2) the defendant unlawfully appropriated property in violation of the Texas Penal Code; and (3) the plaintiff sustained damages as a result of the theft.  See Dixon v. Bank of New York Mellon, Civil Action No. 3:130CV-4235-L, 2014 WL 2991742, *4 (N.D. Tex. July 3, 2014).

---

[48]Plaintiff's Opposition, Docket Entry No. 9, p. 8 ¶ 17.

Citing the Texas Penal Code's definitions of "deprive" in § 31.01(2)(B) and "property" in § 31.01(5)(B), Simmonds argues that its TTLA claim is not subject to dismissal for failure to state a claim because "[t]he TTLA is expressly violated when a wrongdoer misappropriates property in order to extract a reward or other compensation from the owner,"[49] and that its website qualifies as "property" because § 31.01(5)(B) defines "property" to include "tangible or intangible personal property."[50]  Section 31.01(2)(B) defines "deprive" to mean "to restore property only upon payment of reward or other compensation;" and § 31.01(5)(B), which defines "property" to include "tangible or intangible personal property."

Simmonds' allegations that it had a possessory right to its website, that GGR unlawfully appropriated the website by exercising control over the website by disabling it without Simmonds' consent in order to extract from Simmonds payment of allegedly past due invoices under the Marketing Agreement, and that Simmonds sustained damages as a result of GGR's appropriation of the website are sufficient to state a claim for violation of the TTLA.  GGR's assertion that "[w]ithin an hour, [Simmonds] had its original website back online and functional," is a merits argument that is not relevant for purposes of determining whether Simmonds has stated a claim for which relief may be granted.  Accordingly, GGR's motion to dismiss Simmonds' TTLA claim will be denied.

---

[49]Id. ¶¶ 17-18.

[50]Id. ¶ 18.

-27-

## IV.  Conclusions and Order

For the reasons stated in § III.A, above, the court concludes that this action is not subject to dismissal for lack of subject matter jurisdiction because Simmonds has stated a claim for which relief may be granted based on federal law, i.e., the CFAA, 18 U.S.C. § 1030, but that Simmonds has not sufficiently alleged diversity jurisdiction under 28 U.S.C. § 1332. For the reasons stated in § III.B, above, the court concludes that Simmonds' conversion claim is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted, but that Simmonds' claim for violation of the TTLA, Tex. Civ. & Rem. Code § 134.001, et seq., is not subject to dismissal.  Accordingly, GGR's Motion to Dismiss Under FRCP 12(b)(6) and FRCP 12(b)(1) (Docket Entry No. 6) is **GRANTED in PART** and **DENIED in PART.**

Because Federal Rule of Civil Procedure 15 provides for the liberal amendment of pleadings, Simmonds' request for leave to amend included in Plaintiff's Opposition to Defendant's Motion to Dismiss Under FRCP 12(b)(6) and FRCP 12(b)(1) (Docket Entry No. 9) is **GRANTED.**  Simmonds may file an amended complaint within thirty (30) days from the date of this Memorandum Opinion and Order.

**SIGNED** at Houston, Texas, on this 26th day of August, 2015.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-28-